## SCHURTZ v. CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—INJUNCTION — ILLEGAL CONTRACTS — RIGHTS OF TAXPAYER.

> A taxpayer may file a bill to enjoin the payment by a city of a claim for legal services under an alleged illegal contract.

2. SAME—PLEADINGS—IRREGULARITIES—INTERVENTION.

> Any irregularity in allowing an attorney to intervene in a suit by a taxpayer against a city to enjoin the payment of a claim for legal services under an alleged illegal ·contract with intervener will not be considered where the attorneys for the city ask that such attorney's brief and argument be considered as that of the city.

3. SAME—GRAND RAPIDS CHARTER—PUBLIC POLICY.

> A city charter is a declaration of the public policy of the city.

4. SAME — GRAND RAPIDS CHARTER — "VOID OR VOIDABLE" — CONTRACTS—PUBLIC POLICY.

> Under a city charter providing that no officer of a city shall be a party to or directly or indirectly interested in, or be the beneficiary of, any work or contract with the city, and that any contract made in violation of its provisions shall be absolutely void and of no effect "against the city, or any board or department thereof, including the board of education," and that every member of a partnership shall be considered as interested, a contract by a member of a law firm with a city, of the council of which another member of the firm is a member, for the performance of legal services is merely voidable, and at the instance of the city only when deemed best for the public interests, since, by the specifications of those against whom the contract should be void it was not intended to make them void as against any other party.[1]

Appeal from superior court of Grand Rapids; Dunham, J. Submitted October 5, 1917. (Docket No. 36.) Decided December 27, 1917.

---

[1]As to obligation of public corporation for services rendered under contract in which officer is personally interested, see note in 34 L. R. A. (N. S.) 129.

Bill by Perry Schurtz against the city of Grand Rapids and Sheridan F. Master to enjoin the payment of a bill for legal services by defendant Master. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Shelby B. Schurtz,* for plaintiff.

*Ganson Taggart* and *Charles A. Watt,* for defendant city.

*Grant Sims* and *Sheridan F. Master,* for defendant Master.

Plaintiff, as a resident taxpayer and qualified elector of the city of Grand Rapids, filed a bill against said city in the superior court thereof, praying for a perpetual injunction restraining said defendant from paying Sheridan F. Master the sum of $1,530.58 as attorney fees; also for a temporary restraining order preventing such payment until defendant should, pursuant to an order therefor, show cause why an injunction should not issue for the purpose stated until the final hearing of said bill. On the following day Sheridan F. Master petitioned for leave to intervene as a defendant, and plaintiff thereupon filed a motion to dismiss said petition, for the reason, among others, that the petition was not accompanied by any answer. A hearing was had within a few days, with the result that the court granted Master leave to intervene; whereupon defendant Master filed an answer and made a motion to dismiss plaintiff's bill, which motion was at once heard by the court. The city of Grand Rapids appeared at this time by the city attorney, who took part in the hearing on Master's motion, and after the hearing was concluded, and on the same day, filed an answer and a motion to dismiss plaintiff's bill, on behalf of the city. Several days thereafter the court

filed an opinion and entered an order dismissing plaintiff's bill. From this final order plaintiff appeals.

The controversy arose because of the employment of defendant Master by the city to defend, on its behalf, three certain actions brought to test the constitutionality of its charter, two in the superior court of Grand Rapids, and the other in the circuit court for the county of Kent, and also for the defense of two of said suits in this court on appeal. See *Kopczynski* v. *Schriver*, 194 Mich. 553 (161 N. W. 238); *Schurtz* v. *City of Grand Rapids*, 195 Mich. 751 (162 N. W. 296). The validity of this employment is contested by plaintiff on the ground that at the time of such employment Elvin Swarthout, an alderman of said city and chairman of the ways and means committee of the common council, was the law partner of said Sheridan F. Master.

It is admitted upon the record that Alderman Swarthout was the law partner of defendant Master at the time of the employment in question and at the time of the performance of the services and the allowance of the bill therefor, although it appears that Alderman Swarthout did not vote upon such allowance. Counsel for appellant states in his brief:

"There is no question but that the services were performed by Master, and that the city of Grand Rapids ought to pay Master unless the charter of Grand Rapids prohibits such payment."

Plaintiff's bill is based on Act No. 593, Local Acts of 1905, tit. 16, § 18, which is in part as follows:

"No officer or employee of the city or any department thereof or of the board of education shall be a party to or directly or indirectly interested in or be the beneficiary of any work, contract, purchase or sale, for, with, from or to the city, or any department thereof, including the board of education; or to or in any work, contract, purchase or sale with any contractor in relation to any work, contract, purchase

or sale for, with, from or to the city or any department thereof, including the board of education, or in any work, contract, purchase or sale in which the city, including the board of education, has a direct or indirect pecuniary interest. Bids or contracts for or purchases of any material, machinery, process or thing, which, or the supply of which, is controlled by one person or company, or which is in any sense a monopoly, shall not be invited or made by or on behalf of the city or any department thereof, including the board of education, included with other things to be bid upon or purchased, but must be invited and made separately. Any contract, purchase, sale or bid made in violation of the provisions of this section shall be absolutely void and of no force or effect against the city or any board or department thereof, including the board of education. Any officer, member of a board or employee of the city, or of the board of education violating any of the foregoing provisions shall be forthwith deprived of his office or employment under the city government, if a city officer, board member or employee, pursuant to section eleven of title II of the city charter; if a member of the board of education or of the library commission, he shall be removed by those bodies under provisions substantially conforming to said section eleven of title II of the said city charter. In construing this section every member of the common council (but with reference only to work, contract, purchase or sale directed or made by the council), and every member of any board provided for in this act (but with reference only to work, contract, purchase or sale directed or made by such board) shall be considered an officer of the city, and in every case every member of an interested partnership and every stockholder of an interested corporation or joint stock association, excepting public service corporations, shall be considered interested. The prohibitions of this section shall not apply in case the work, contract, purchase or sale in question is directed or made by the council, or by any board provided for in this act, if said council or board shall declare on its records, by resolution adopted by three-fourths of the entire membership, that such work, contract, purchase or sale to

or with such interested person is necessary for the best interests of the city, notwithstanding such prohibition."

It is plaintiff's claim that the employment of the defendant Master as attorney for the city was absolutely void under the terms of said section, and hence that he is not entitled to any compensation for the services rendered.

The three cases which Master was employed to defend were decided in favor of the defendants in the lower courts, and the two cases which were appealed resulted in an affirmance by the Supreme Court. A report of the final determination of these cases was made to the council at its meeting on March 5, 1917, by defendant Master and Messrs. Jewell & Smith, who were associated with him, and at the same meeting Master presented his bill for services and disbursements in said matter, which, after reference to committees and after some discussion and attempted action at several meetings, was, at the meeting of April 30, 1917, approved and ordered paid by a vote of 16 to 3, one of the three being Alderman Swarthout, who was excused from voting. This resolution to pay was vetoed by the mayor, and on May 5, 1917, the council passed the same resolution over the mayor's veto by the same vote as at the former meeting. It is to prevent the payment of this bill that plaintiff has instituted these proceedings.

KUHN, C. J. (after stating the facts). In the opinion filed by the judge of the superior court some doubt is expressed as to the propriety of the plaintiff's filing this bill. We are of the opinion, however, that plaintiff had a right to initiate this proceeding, under the authority of McManus v. City of Petoskey, 164 Mich. 390 (129 N. W. 681), in which case this subject is fully discussed, and the cases in support of this conclusion cited.

We do not think there is any merit to the contention that Mr. Master should not have been allowed to intervene and be heard in this case. The attorneys for the city say in their brief:

"If anything in the proceedings can be considered irregular, we ask that his brief and argument may be, if necessary, treated as made by counsel for the city."

In view of this statement, we shall consider that his brief is filed in behalf of the city, and thus any irregularity, if any, in the practice of allowing his intervention need not be considered.

We now approach the discussion of what we consider the important question in the case: Does the provision of Act No. 593, Local Acts of 1905, tit. 16, § 18, above quoted, render the contract between the city of Grand Rapids and Mr. Master absolutely void, or merely voidable?

While the contention of defendants' counsel is unquestionably true that the term "void" has often been used loosely and inaccurately in statutory provisions, and that "the words 'void' and 'invalid,' when used in regard to contracts not immoral nor against public policy, usually mean voidable at the option of one of the parties, or some one legally interested therein" (*Doney* v. *Laughlin*, 50 Ind. App. 38 [94 N. E. 1027]), it is equally true that in the construction of provisions aimed to prevent the evil against which the particular provision here in question is directed the great weight of authority is to the effect that the word "void" in such cases is used in its literal sense of "null or of no effect from the beginning, and not admitting of ratification." *United States* v. *Dietrich*, 126 Fed. 671; *Capron* v. *Hitchcock*, 98 Cal. 427 (33 Pac. 431) ; *City of Greenfield* v. *Black*, 42 Ind. App. 645 (82 N. E. 797). Even in cases where the statute prohibiting such contracts fails to expressly declare them void, neverthe-

less, if the statute imposes a penalty for the making of such a contract, there is no doubt of the general rule of law that the courts will neither enforce that contract at the suit of one party nor, if the contract has been executed, aid either party to recover back anything he may have paid thereon. In such cases:

"The courts infer a legislative intent that the contracts shall be void, because to enforce the contract would practically set the statute at naught." *Laun* v. *Insurance Co.*, 131 Wis. 555 (111 N. W. 660, 9 L. R. A. [N. S.] 1204).

This court, in the recent case of *Ferle* v. *City of Lansing*, 189 Mich. 501 (155 N. W. 591, L. R. A. 1917C, 1096), followed this rule, and, in the absence of express nullifying words, held that a contract made in violation of a penal prohibitive provision in the city charter was absolutely void, and affirmed a decree enjoining the city from paying for materials furnished to it under such a contract.

The ground upon which the construction of the word "void" in this class of cases is distinguished from the more liberal interpretation adopted in most other instances is referred to in the case of *Doney* v. *Laughlin, supra,* one of the cases cited by the appellees in support of the contention that the word should be construed as "voidable." The following is taken from 50 Ind. App. at page 42 (94 N. E. 1027, 1028), in the opinion:

"It has also been held that: 'If it concerns the public good, it is generally to be considered void; but if it is prohibited for the purpose of securing the private rights of the parties interested, it is only voidable. Where the public interest is not concerned, it is sufficient to allow the party who may be prejudiced by an unlawful sale or contract to avoid it.' *Mutual Benefit Life Ins. Co.* v. *Winne,* 20 Mont. 20 [49 Pac. 446].

"See, also, *Fletcher* v. *Stone,* 3 Pick. (Mass.) 250; *Veeder* v. *Trust Co.,* 61 Neb. 892 [6 N. W. 982]; *Van*

*Schaack* v. *Robbins,* 36 Iowa, 201; *Denny* v. *McCown,* 34 Or. 47 [54 Pac. 952]."

This same ground of distinction was suggested by Mr. Justice COOLEY in his opinion in the case of *Beecher* v. *Rolling Mill Co.,* 45 Mich. 103 (7 N. W. 695), where he said:

"Mr. Justice Bayley in one case intimated that the word 'void' in a statute might be construed 'voidable' where the provision is introduced for the benefit of parties only, but not where it is introduced for public purposes and to protect those who are incapable of protecting themselves (*Rex* v. *Hipswell,* 8 B. & C. 466, 470), and though this distinction has been questioned (*Rex* v. *St. Gregory,* 2 Ad. & El. 99, 107), much good reason lies at the foundation of it. If it is apparent that an act is prohibited and declared void on grounds of general policy, we must suppose the legislative intent to be that it shall be void to all intents; while if the manifest intent is to give protection to determinate individuals who are *sui juris,* the purpose is sufficiently accomplished if they are given the liberty of avoiding it."

Inasmuch as "the charter itself is the declaration of the public policy of the city" (*Ferle* v. *City of Lansing, supra*), if the language of the act here in question clearly and unequivocally declares the contract absolutely void, we are convinced that the contention of the appellant must be sustained and the word given its literal meaning.

It is claimed, however, that there is no such unqualified declaration in the act in question, but that the word "void" is qualified in two respects: (1) By adding to it the words "against the city, or any board or department thereof, including the board of education"; (2) by expressly providing a method in which a contract of the kind declared void may be lawfully entered into.

The wording of this statute is unusual and peculiar, and we feel constrained to give these contentions care-

ful consideration, because there is ample authority to sustain the conclusion that even in the case of statutes designed to protect the public interests or promote some public policy the rule is not invariable that the word "void" must be given its literal meaning, but the whole purview of the statute may sometimes indicate that the word is used in the broader sense of "voidable."

"Where the contract is declared 'void' by statute, and the statute is within the power of the legislature to enact, there is not much room for discussion, although even then the whole purview of the statute may indicate that the word 'void' is used in the sense of 'voidable.'" *Laun* v. *Insurance Co., supra.*

The exact wording here involved is:

"Any contract, purchase, sale, or bid made in violation of the provisions of this section shall be absolutely void and of no force or effect against the city, or any board or department thereof, including the board of education."

Were the language merely, "shall be absolutely void and of no force or effect," it would be difficult to escape the conclusion that such a clear declaration of the legislative intent to render such contracts absolutely null and ineffective from their inception must prevail, and the words be given their obvious meaning. Those words alone would have made such contracts wholly void as against the city and any board or department thereof, as well as against all other parties and for all effects and purposes. The added words clearly limit and qualify the effect of the word "void." "*Expressio unius est exclusio alterius.*" Having specified against whom such contracts shall be considered absolutely void, there is no room for the contention that it was intended to declare them void as against any other party. And when a situation arises in which a contract is void as to one party and

in force as to the other, is not the exact situation of a voidable contract presented? The contract is not wholly inert and lifeless; for some purposes it has efficacy and its provisions may to some extent be enforced. We are unable, therefore, to find in this provision the legislative intent to declare such contracts wholly void for the protection of the interests of the public, who are not parties to the contract and are unable to protect themselves, but rather the purpose and intent to give the city the option of treating such contracts as void whenever it may seem to best serve the public interests to do so.

In the instant case the defendant the city of Grand Rapids makes no claim that the contract is void, evinces no desire to avoid it, but, on the contrary, asserts the validity thereof, admits that the services have been rendered and that it stands ready and willing to pay for same, and actively contests the effort of plaintiff to prevent it from so doing. No one but the city can raise the objection, and inasmuch as it has not done so, we have no ground for interference with the proposed payment of Mr. Master's bill by the city authorities.

Under this view of the situation, it becomes unnecessary to discuss the effect of that provision of the act which sets forth a method whereby such contracts may be legally entered into, or to consider the question of whether or not proper steps have been taken for a ratification of the contract in question.

The decree dismissing plaintiff's bill of complaint is affirmed, but without costs.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.